UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANET MARIE RINCON,                        Case No. 14-12098

             Plaintiff,                   Paul D. Borman
v.                                         United States District Judge

COMMISSIONER OF SOCIAL SECURITY,           Michael J. Hluchaniuk
                                           United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 15, 16)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On May 27, 2014, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Paul D.

Borman referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims for period of disability,

disability insurance and supplemental security income benefits. (Dkt. 4). This

matter is before the Court on cross-motions for summary judgment. (Dkt. 15, 16).

Plaintiff also filed a response brief to the Commissioner's motion for summary

1

judgment. (Dkt. 17). These motions are now ready for report and recommendation.

      B.    <u>Administrative Proceedings</u>

      Plaintiff filed the instant claim for disability insurance and supplemental security income benefits on May 17, 2011, alleging disability beginning June 30, 2010. (Dkt. 11-2, Pg ID 47). Plaintiff's claims were initially denied by the Commissioner on October 7, 2011. *Id.* Plaintiff requested a hearing and on February 5, 2013, plaintiff testified before Administrative Law Judge ("ALJ") Richard Guida, who considered the case de novo. (Dkt. 11-2, Pg ID 67-87). In a decision dated March 15, 2013, the ALJ found that plaintiff was not disabled. (Dkt. 11-2, Pg ID 47-61). Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on April 18, 2014, denied plaintiff's request for review. (Dkt. 11-2, Pg ID 33-35); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

      For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

A.    <u>ALJ Findings</u>

Plaintiff was born in 1969 and was 40 years old on the alleged disability onset date. (Dkt. 11-2, Pg ID 59). Plaintiff had past relevant work as a bakery assistant, cashier, stocker and assembler. *Id*. The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since June 30, 2010, the alleged on-set date. (Dkt. 11-2, Pg ID 49).  At step two, the ALJ found that plaintiff had the following severe impairments:  carpal tunnel syndrome, degenerative disc disease, degenerative joint disease, fibromyalgia, headaches, and depressive disorder and panic/anxiety disorder. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 11-2, PgID 49-51).

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform sedentary work, except:

> she can only occasionally climb ramps/stairs, crouch,
> crawl, stoop, kneel, push/pull with her bilateral upper
> extremities and handle with her dominant (right) hand;
> she can never climb ladders, ropes, or scaffolds; she is
> limited to unskilled work that is limited to simple routine
> repetitive tasks, involving only simple work-related

3

> decisions with few, if any, workplace changes and only
> occasional interaction with supervisors, co-workers and
> the public.

(Dkt. 11-2, Pg ID 51-52). At Step Four, the ALJ found that plaintiff could not

perform her past relevant work as a bakery assistant, cashier, stocker and

assembler. (Dkt. 11-2, Pg ID 59). However, the ALJ determined that, considering

plaintiff's age, education, experience, and RFC, there were jobs that exist in

sufficient numbers that plaintiff can perform and therefore, plaintiff had not been

under a disability from the alleged onset date through the date of the decision.

(Dkt. 11-2, Pg ID 60).

      B.    <u>Plaintiff's Claims of Error</u>

Plaintiff argues that the ALJ's analysis of the VE's testimony and his

finding that there was other work plaintiff could perform is not supported by

substantial evidence. (Dkt. 15, Pg ID 482). Plaintiff asserts that the VE testimony

was flawed because the DOT codes he cited did not correspond to the referenced

jobs. (Dkt. 15, Pg ID 483). Specifically, the VE cited the DOT code for

surveillance system monitor as the code for stock checker. According to plaintiff,

the ALJ erred in assuming this misstatement was the result of a mental error and

that the VE meant to cite surveillance system monitor, rather than stock checker.

4

(Dkt. 15, Pg ID 483-485). Plaintiff maintains that the ALJ denied benefits not based on the VE's actual testimony, but on the ALJ's mistaken interpretation of the VE's error, hence the decision is not supported by substantial evidence. (Dkt. 15, Pg ID 485).

Plaintiff also asserts that the ALJ erred in his consideration of plaintiff's psychiatric impairments, ignoring the nature of said impairments, significant evidence of record, and case law concerning such consideration. *Id*. Specifically, plaintiff asserts that the ALJ erroneously dismissed the opinions of Dr. Oliver-Brannon, the consultive examiner and only psychological expert who examined plaintiff. *Id*. According to plaintiff, Dr. Oliver-Brannon concluded that plaintiff's problems would prevent her from engaging in long term employment, but the ALJ disregarded this conclusion because it was based on claimant's self-reported physical symptoms. Plaintiff argues that this ruling defies Sixth Circuit precedent recognizing that mental impairments do not generally result in objective laboratory findings, and that mental status examinations and interviews, like the one Dr. Oliver-Brannon conducted, are the primary method for rendering psychiatric conclusions. (Dkt. 15, Pg ID 486). Citing *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1071 (6th Cir. 1992), plaintiff argues that psychiatric impairments should not be rejected merely because they do not lend themselves to

the same degree of substantiation as other medical impairments. *Id.* Plaintiff further argues that the ALJ erred in dismissing Dr. Oliver-Brannon's opinion because it was ambiguous, asserting that the opinion was "quite clear." (Dkt. 15, Pg ID 487). Plaintiff also argues that the ALJ was unduly dismissive of Dr. Hafeez's opinion that plaintiff's physical complaints were caused by her "significant psychological issues." Plaintiff asserts that Dr. Hafeez's opinion is consistent with Dr. Oliver-Brannon's opinion and actually bolsters plaintiff's argument that Dr. Oliver-Brannon's opinion on plaintiff's psychological ailments should control. *Id*.

Finally, plaintiff contends that the ALJ's treatment of her fibromyalgia was contrary to controlling legal principles and unsupported by substantial evidence. (Dkt. 15, Pg ID 488). Again, plaintiff argues that the ALJ did not properly consider Dr. Hafeez's findings and diagnosis of fibromyalgia, instead discrediting plaintiff's symptoms because they were not supported by objective findings. *Id*. Plaintiff notes that the Sixth Circuit has recognized that fibromyalgia generally cannot be demonstrated by objective and diagnostic medical tests. (Dkt. 15, Pg ID 489, citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 244 (6th Cir. 2007)). Plaintiff contends that the ALJ's misunderstanding of fibromyalgia not only prompted him to ignore the opinion of plaintiff's treating physician, but also

6

undermined his credibility determinations. (Dkt. 15, Pg ID 490). Plaintiff argues that the ALJ discredited plaintiff's complaints about her symptoms, despite the fact that her doctors did not question her credibility or suggest malingering, simply because of the lack of objective findings. (Dkt. 15, Pg ID 489-490).

C.    The Commissioner's Motion for Summary Judgment

The Commissioner contends that the ALJ gave proper weight to Dr. Oliver-Brannon's opinions. Dr. Oliver-Brannon wrote that Plaintiff had a "history of mood and physical limitations which seem[ed] to prevent her from engaging in full long term employment." (Dkt. 16, Pg ID 504-505; Dkt. 11-7, Pg ID 372). Because Dr. Oliver-Brannon only met with Plaintiff once, her opinion was "not entitled to any particular weight, and certainly [was] not entitled to 'controlling weight,' like treating physicians…" *Tate v. Comm'r of Soc. Sec.*, 2014 WL 4536929, at *19 (E.D. Mich. Sept. 11,2014); *Karger v. Comm'r of Soc. Sec*., 414 F. App'x 739, 744 (6th Cir. 2011). The Commissioner argues that the ALJ cited multiple valid reasons for discounting Dr. Oliver-Brannon's opinion. First, the ALJ objected to Dr. Oliver-Brannon's "reliance on [Plaintiff's] self-reporting, particularly with regards to physical symptoms and limitations (considering Dr. Oliver-Brannon is a psychologist), is found to be misplaced." (Dkt. 16, Pg ID 505;

7

Dkt. 11-2, Pg ID 59). According to the Commissioner, the ALJ's rejection of Dr.
Oliver-Brannon's opinion was primarily due to its unquestioning acceptance of
plaintiff's characterization of her physical impairments, as opposed to her self-
reported psychological symptoms.  Second, the ALJ asserted that Dr. Oliver-
Brannon's opinion was vague as to whether it was plaintiff's mental or physical
impairments that impeded her ability to work. (Dkt. 16, Pg ID 506-507). Third, the
ALJ noted that Dr. Olvier-Brannon's opinion conflicted with her own notes. (Dkt.
16, Pg ID 507). Specifically, the ALJ mentioned that "Dr. Oliver-Brannon's
ambiguous statement regarding [Plaintiff] being seemingly prevented from
longterm employment is incongruous with her findings that [Plaintiff] can engage
appropriately with others and is able to understand and engage in simple to
moderate daily living activities." (Dkt. 11-2, Pg ID 59 citing Dkt. 11-7, Pg ID
372); *cf. Ghanim v.Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict
between treatment notes and a treating provider's opinions may constitute an
adequate reason to discredit the opinions of a treating physician…"). (Dkt. 16, Pg
ID 507).

The Commissioner further notes that Dr. Oliver-Brannon's opinion
conflicted with the unremarkable mental findings in the rest of the record. Indeed,

8

Plaintiff was regularly alert and/or oriented, had normal speech, had a normal affect, had normal memory, and had normal insight. (Dkt. 16, Pg ID 508)(internal citations to the transcript omitted). Furthermore, her concentration was normal, she was referred to as calm and/or cooperative, she had good comprehension, and she had good judgment. *Id*. Her providers routinely noted that psychiatric symptoms, including depression, were not present. *Id* ("Psychiatric: not present – depression"); see also20 C.F.R. §§ 404.1527(c)(4) and 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). *Id*. Finally, the Commissioner asserts that Dr. Oliver-Brannon's opinion is not entitled to any special significance because a statement from a medical source that a claimant is unable to work is not due deference under the Regulations. (Dkt. 16, Pg ID 507).

The Commissioner argues that the ALJ properly considered Dr. Hafeez's opinion, as well. (Dkt. 16, Pg ID 508). The Commissioner argues that Dr. Hafeez's records provide no opinion because they do not reflect what the plaintiff can do despite her impairments and physical and mental restrictions. (Dkt. 16, Pg ID 509). The Commissioner points out that the ALJ need not have discussed all of Dr. Hafeez's diagnoses because the ALJ had already discussed the diagnosed conditions exhaustively such that further discussion would not have added

9

anything to the RFC. *Id*. In addressing plaintiff's arguments about Dr. Hafeez's suspicion that "significant psychological issues caused plaintiff's multiple complaints," the Commissioner dismisses any corroborative support this comment would have in relation to Dr. Oliver-Brannon's opinion because Dr. Oliver-Brannon's opinion did not indicate plaintiff's mental impairments caused her physical complaints. (Dkt. 16, Pg ID 510).

In connection to plaintiff's arguments about the ALJ's consideration of her fibromyalgia, the Commissioner emphasizes that "disability claims related to fibromyalgia are related to the *symptoms* associated with the condition…rather than the underlying condition itself ." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011) (emphasis in original)(Dkt. 16, Pg ID 512). The Commissioner argues that the record demonstrates that plaintiff's symptoms were not disabling. *Id*. Citing to her medical records, the Commissioner argues plaintiff did not suffer widespread soft tissue pain, often reporting that she was in no pain, with doctors noting that she was in no acute distress and appeared well. *Id*. The Commissioner also cites records noting that plaintiff was not suffering from fatigue, stiffness or trouble concentrating. (Dkt. 16, Pg ID 513). The Commissioner argues that the "mountain of completely normal findings" the ALJ

10

discussed shows that no physical impairment plaintiff has, fibromyalgia or otherwise, justifies anything greater than the restricted sedentary RFC assessed by the ALJ.

Finally, the Commissioner argues that the ALJ did not err by concluding that the VE meant to attach the DOT code for surveillance system monitor to that job. The Commissioner notes that the VE testified twice that plaintiff could work as a surveillance system monitor. The Commissioner notes that the ALJ relied only upon the job of surveillance system monitor, which had sufficient positions available to support the conclusion that plaintiff was not disabled. (Dkt. 16, Pg ID 514).

D.    Plaintiff's Reply

In reply, plaintiff concedes that Dr. Oliver-Brannon's opinion relied on both her physical and her mental impairments. (Dkt. 17, Pg ID 520). Plaintiff also argues that the Commissioner sidestepped the issue of the ALJ finding that Dr. Oliver-Brannon's opinion was unclear as to how much plaintiff's mental impairments limited her ability to work, and suggests that the Commissioner conceded plaintiff's point that it was completely clear how much impact plaintiff's mental health had on her abilities. (Dkt. 17, Pg ID 520-521).   Plaintiff argues that

11

the Commissioner and the ALJ fail to appreciate the nuance between performing

sporadic daily activities and doing work on a regular and sustained basis. (Dkt. 17,

Pg ID 521).

Plaintiff argues that Dr. Hafeez's records include statements about

plaintiff's symptoms and diagnoses, thus qualifying them as opinions to be

considered by the ALJ. (Dkt. 17, Pg ID 522).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

12

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

13

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

14

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc.

Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that

"significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

17

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis

    1.    Medical Source Opinions

In the view of the undersigned, the ALJ's decision to assign little or no weight to the opinions of Dr. Oliver-Brannon and Dr. Hafeez is supported by substantial evidence.

Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the

18

> nature and severity of an individual's impairment(s), including
> symptoms, diagnosis and prognosis, what the individual can still do
> despite the impairment(s), and physical and mental restrictions.

SSR 06-3p, 2006 WL 2329939, at *2 (2006).

> An opinion from a medical source who has examined a claimant is given
> more weight than that from a source who has not performed an examination
> (a "nonexamining source"), and an opinion from a medical source who
> regularly treats the claimant (a "treating source") is afforded more weight
> than that from a source who has examined the claimant but does not have an
> ongoing treatment relationship (a "nontreating source").

*Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013)(internal

citations omitted). An ALJ is required to evaluate every medical opinion of record,

and set forth a valid basis for rejecting any.  20 C.F.R. §404.1527; *see Shelman v.*

*Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Commissioner is to weigh these

opinions based on the examining relationship (or lack thereof), specialization,

consistency, and supportability. 20 C.F.R. § 404.1527(c); *see Gayheart v. Comm'r*

*of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013). Other factors "which tend to

support or contradict the opinion" may be considered in assessing any type of

medical opinion. *Id.* 20 C.F.R. §404.1527(c)(6).

Because the Commissioner is responsible for determining whether a

claimant meets the statutory definition of disability, the ALJ "will not give any

special significance to the source of an opinion[, including treating sources], on

19

issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a dissension's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

Contrary to plaintiff's position, the ALJ appropriately assigned Dr. Oliver-Brannon's opinion little weight. First, the equivocal nature of Dr. Oliver-Brannon's medical source statement ("The claimant is a 42 year old woman with a history of mood and physical limitations which *seems* to prevent her from engaging in full long term employment")(emphasis added) oppugns its status as an actual medical opinion under the regulatory definition. *See* SSR 06-3p. Such ambiguity belies the decisive and conclusive characteristics of the judgment contained within a true medical opinion. *Id.* Moreover, even if Dr. Oliver-Brannon's medical source statement were expressed with more certainty, it would

20

be owed no special significance because it bears on an issue expressly reserved to the Commissioner, was rendered after a single examination and was based, in part, on physical (as opposed to psychological) limitations, a matter in which Dr. Oliver-Brannon had no specialized knowledge. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 404.1527(d)(3). Finally, as noted by the Commissioner and the ALJ, the statement regarding plaintiff's ability to work is incongruous with Dr. Oliver-Brannon's findings that [plaintiff] can engage appropriately with others and is able to understand and engage in simple to moderate daily living activities. *See Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c)(6). For all of these reasons, the undersigned finds the ALJ assigned appropriate weight to Dr. Oliver-Brannon's opinion.

Plaintiff also argues that the ALJ improperly disregarded the opinion of her treating physician, Dr. Hafeez.  The medical records of Dr. Hafeez do not contain a physician's judgment on how the nature and severity of her impairments restrict or impact her capabilities, but instead contain only recitations of Plaintiff's reported symptoms and subjective complaints.

> [A] [d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the opposite of objective medical evidence. [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions.

*Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011).

Plaintiff obliquely argues that the ALJ ignores Dr. Hafeez's findings and conclusions relating to her fibromyalgia, emphasizing her significant subjective complaints by citing generally to the findings and diagnoses of Dr. Hafeez, but without citing specifically to the record. She does not identify an opinion from Dr. Hafeez (or any of Plaintiff's treating physicians) that the ALJ either ignored or discredited, nor does she advance any specific argument as to how the ALJ's determination conflicted with any opinion from Dr. Hafeez.

Although this court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments, *see Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at *6 (W.D.Mich. 2010)("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.")(citations omitted), a review of the record by the undersigned reveals no medical opinion from Dr. Hafeez not considered by the ALJ. The ALJ noted the headaches, body pain and chronic fatigue chronicled by Dr. Hafeez, but notes the moderate severity described as being consistent, and thus addressed by the developed RFC. (Dkt. 11-2, Pg ID 57).

Dr. Hafeez's records also contain the following note; "<u>Suspect</u> significant

psychological issues as causing her multiple complaints." (Dkt. 11-7. Pg ID 457)(emphasis in original). To the extent Dr. Hafeez, a neurologist, expresses an opinion in this note, it is an opinion on plaintiff's psychological impairments, a subject upon which he carries no specialized knowledge. *Id*; 20 C.F.R. § 404.1527(c). Moreover, like that of Dr. Oliver-Brannon, Dr. Hafeez's note is so speculative, it does not reflect a judgment about the plaintiff's impairments, and thus cannot meet the regulatory definition of a medical source opinion. *See* SSR 06-3p. For these reasons, the undersigned finds that the ALJ gave Dr. Hafeez's records appropriate consideration.

2.    <u>VE Testimony</u>

In providing testimony on jobs someone of plaintiff's age, education, experience and RFC could perform, the VE erroneously cited the DOT code for surveillance system monitor in conjunction with the cited job of stock checker. (Dkt. 11-2, Pg ID 60). The ALJ recognized this error and attempted to explain it as a "mental error." *Id*. Plaintiff argues that the confusion manifest by the cited DOT codes, which did not correspond to the job titles identified by the VE, and the assumptions made by the ALJ in reconciling the conflicting VE testimony, require remand.  Nevertheless, the ALJ determined that the VE's error was not a determinative factor because the VE had identified, by way of title and code

number, surveillance system monitor as a job that existed in the economy that an
individual with the claimant's age, education, work experience and RFC could
perform, and the ALJ relied solely on this identified job in finding that the plaintiff
was not disabled.[1] (Dkt. 11-2, Pg ID 61).

Any error by the VE in citing incongruous DOT codes, as well as any error
by the ALJ in reconciling the conflicting VE testimony is harmless. *See Austin v.
Comm'r of Soc. Sec.*, 2010 WL 1170630, *3 (N.D.Ohio, March 23,
2010)(although ALJ may not rely on VE testimony that is inconsistent with
regulatory definitions, such error is harmless if VE identifies other positions
plaintiff could perform); s*ee also, Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601,
606-607 (6th Cir. 2009). Here, the VE cited both the DOT code and title for
surveillance system monitor, and the ALJ relied exclusively on plaintiff's ability
to perform this job in making his disability determination.  Incongruous DOT
codes and descriptions for other positions about which the VE testified but the
ALJ did not rely upon are not material and do not require remand to rectify.

For all these reasons, after review of the record, the undersigned suggests
that the VE's testimony relied upon by the ALJ, and the ALJ's determination that

---

[1]The ALJ also identified a potential conflict between the DOT description for the
identified position of lens inserter and polisher and plaintiff's RFC, but, by relying solely on the
surveillance system monitor position, this conflict is irrelevant. (Dkt. 11-2, Pg ID 61).

24

plaintiff is not disabled are supported by substantial evidence.  The decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

25

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 24, 2015                    s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on <u>August 24, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to <u>all counsel of record.</u>

<u>s/Tammy Hallwood</u>

Case Manager

(810) 341-7887

tammy_hallwood@mied.uscourts.gov

27